IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

FIRST NATIONAL BANK OF OMAHA,

                  Plaintiff-Appellant,         OPINION & ORDER

   v.

                                                         11-cv-675-wmc

PHOUTHASONE SYSOUVANH,

                  Defendant-Appellee.
───────────────────────────────────────────────────────────────

      Following several months of charges to a credit card issued by First National Bank of Omaha ("FNBO"), defendant Phouthasone Sysouvanh and her husband filed for Chapter 7 relief in the Bankruptcy Court for the Western District of Wisconsin. FNBO initiated an adversary proceeding to except from discharge this debt of approximately $11,000. The bankruptcy court found the debt dischargeable and awarded attorneys' fees and costs to Sysouvanh on the grounds that the adversary proceeding was not substantially justified. This court affirmed that holding on August 28, 2013. (Dkt. #22.)

      Following the appeal, Sysouvanh moved for an award of damages and costs pursuant to Federal Rule of Bankruptcy Procedure 8020. (Dkt. #24.) Soon thereafter, FNBO timely moved for rehearing pursuant to Federal Rule of Bankruptcy Procedure 8015. (Dkt. #26.) For reasons set forth below, the court will now deny both motions.[1]

---

[1] FNBO also moved for leave to file a sur-reply to Sysouvanh's Reply in Support of her Motion for Fees. (Dkt. #31.) Because her initial motion was unsupported by a brief, the court agrees that Sysouvanh's entire reply constitutes "new argument" to which FNBO did not have a chance to respond. Having considered and rejected Sysouvanh's reply arguments, however, FNBO's motion to file a sur-reply is denied as moot.

BACKGROUND

In its previous Opinion & Order resolving FNBO's original appeal, the court adopted in substantial part the bankruptcy court's findings of facts, which were not at issue.  (*See* Opinion & Order (dkt. #22) 2 n.2.)  Those facts remain undisputed, and so the court sets forth only a brief summary of the background and procedural posture of this case.

In March 2008, FNBO sent Sysouvanh a pre-approved offer for a Visa credit card, which she filled out and returned listing her husband's income.  Once the card was issued by FNBO, Sysouvanh used it from the summer of 2008 until August 2009.  She and her husband then paid off the balance in full in a single lump-sum payment and stopped using the card until March 2010.  By that time, the Sysouvanhs had taken on substantial debt, and Sysouvanh again began to incur charges on the FNBO Visa card, including some for non-essential luxuries like country club expenses and plane tickets.  In all, she incurred over $11,000 in charges.  Sysouvanh made the minimum payment for the April and May 2010 billing cycles, but failed to make the $210 minimum payment for the June 2010 billing cycle.  She also stopped using the card the same day that payment was due.  Shortly thereafter, she informed FNBO she would not be able to afford minimum monthly payments going forward.  In response, a FNBO representative offered her two separate payment plan options, both of which she rejected.  She made a final online payment of $100 toward the balance on July 27, 2010, and FNBO closed the line of credit on August 20, 2010.  At that time, the balance remaining was approximately $10,900.

The Sysouvanhs contacted a bankruptcy attorney in mid-August; obtained pre-bankruptcy counseling certificates on August 27, 2010; and filed a petition for Chapter 7

relief on October 3, 2010 in the United States Bankruptcy Court for the Western District of Wisconsin. The bankruptcy court discharged their debts on January 5, 2011.

The bankruptcy court held a bench trial on July 8, 2011, on FNBO's adversary complaint seeking an exception to discharge for its debt under 11 U.S.C. § 523(a)(2)(A) and (B). The court found that Sysouvanh intended to pay off the debts at the time she incurred them, based on the credibility of her testimony; the fact that she stopped using the card on July 16, but still made below-minimum payments after that date; and the fact that her spending pattern was no different than ordinary. On July 22, 2011, it entered a decision confirming the discharge of the debt and finding that FNBO's position had not been substantially justified, awarding Sysouvanh attorney's fees pursuant to 11 U.S.C. § 523(d).

FNBO appealed the decision to this court, which affirmed the decision of the bankruptcy court on the grounds that it was not clearly erroneous. Specifically, the court found that there were two permissible views of the evidence presented to the bankruptcy court, meaning the bankruptcy court was free to credit Sysouvanh with an intention (however unrealistic) to repay the debt when incurred, particularly since that court had an opportunity to judge her credibility on the witness stand. The court also deferred to the bankruptcy court's decision that while FNBO had reason to inquire further into the circumstances surrounding Sysouvanh's bankruptcy filing, FNBO was not *substantially* justified in bringing the adversary proceeding. Even so, this court also found that Sysouvanh had "veered dangerously close to fraud territory" in light of the family's precarious finances; the short time between the charges and the bankruptcy proceedings; and the non-essential nature of many purchases.

OPINION

**I. Motion for Attorneys' Fees and Costs**

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. Bankr. P. 8020. An appeal is considered "frivolous" "when the result is obvious or when the appellant's arguments are wholly without merit." *In re Bussom-Sokolik*, 635 F.3d 261, 270 n.3 (7th Cir. 2011) (quoting *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir. 1994)). "Even when genuinely appealable issues may exist, appellant's misconduct in arguing the appeal may render the appeal 'frivolous as argued.'" *In re Bussom-Sokolik*, (quoting *Dungaree Realty, Inc. v. United States*, 30 F.3d 122, 124 (Fed. Cir. 1994)).

Courts may consider a variety of factors in determining whether to impose sanctions under Rule 8020, including evidence of bad faith; whether the argument is meritless *in toto*; whether only part of the argument is frivolous; and whether appellant properly addresses issues on appeal, fails to support the issues on appeal, fails to cite authority, cites inapplicable authority, makes unsubstantiated factual assertions, makes bare legal conclusions or misrepresents the record. *Id.* at 270 n.4 (quoting *In re Maloni*, 282 B.R. 727, 734 (B.A.P. 1st Cir. 2002)).

**A. Claims of Frivolousness**

Here, Sysouvanh argues that because the standard of review on appeal was "clearly erroneous," the appeal had a very low probability of succeeding and was accordingly frivolous. As a preliminary matter, while findings of fact are not to be set aside unless

4

clearly erroneous, the bankruptcy court's legal conclusions are reviewed de novo. *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007). Moreover, that FNBO faced a high standard of review with regard to overturning any factual findings by the bankruptcy court does not automatically render an appeal from a factual finding frivolous -- particularly since the court found on review that there *was* in fact significant evidence supporting a finding of fraudulent behavior on Sysouvanh's part. While this court found that evidence insufficient to rise to the level of clear error on the bankruptcy court's part, this does not mean the result of the appeal was "obvious" from the start, as Sysouvanh contends.

Sysouvanh's second argument that the fact-intensive nature of the intent inquiry gave the appeal a low probability of succeeding is just another way of advancing this same standard-of-review argument above. (*See* Appellee's Reply (dkt. #30) 6-8 (an appellate court may not "second-guess" credibility determinations)). While this court may not generally second-guess a bankruptcy court's determination of credibility, this does not mean such a determination may never be overturned. Indeed, as this court noted in its opinion, courts have developed a list of objective factors that serve as presumptive signals in such an inquiry. (*See* Opinion & Order (dkt. #22) 12-13 (citing *in re Bungert*, 315 B.R. 735, 739-40 (Bankr. E.D. Wis. 2004)).) FNBO's (accurate) argument was that several of those factors cut in its favor. Although this court found that FNBO's arguments were not quite enough to overturn the bankruptcy court's judgment that Sysouvanh intended to pay back the debt when she incurred it, it also noted that she had "veered dangerously close to fraud territory." (*Id.* at 16.) Such an appeal is not "frivolous" or worthy of sanctions.

Next, Sysouvanh argues that FNBO's decision to appeal on an "undeveloped" factual record "embodies the definition of 'frivolous.'"  (Appellee's Reply (dkt. #30) 8-9.)  In response, the court need only note that it found this case to be a close one, even excluding consideration of the exhibits that were never admitted into evidence.

Sysouvanh also argues that FNBO's central theory in this case had to do with an alleged implied representation about her *ability* to repay, which runs contrary to "long-established precedent" focusing only on a debtor's subjective *intent* to repay.  (*See* Appellee's Reply (dkt. #30) 9-12.)  While this court agreed, finding that the bankruptcy court's decision not to consider Sysouvanh's ability to repay the debts was appropriate, it is not persuaded that FNBO's argument to the contrary was wholly frivolous, particularly since some courts have found that § 523(a)(2)(A) *does* make actionable misrepresentations about ability to pay.  *See, e.g.*, *In re Myers*, Bankr. No. 09-41148, 2010 WL 3521612 (Bankr. D. Kan. Sept. 7, 2010), at *7 (finding that debtor "represented to the Bank that she had not only the intent, *but also the ability*, to repay the debt" each time she used her credit card and that she "either knew that she lacked the ability to repay those debts, or was extremely reckless in not knowing") (emphasis added); *In re Peterson*, 182 B.R. 877, 880 (Bankr. N.D. Okla. 1995) (holding that § 523(a)(2)(A) does not apply to false *statements* about financial condition but does apply to alleged *false representations* about financial condition).  Others hold that "'hopeless insolvency,' or inability to pay, at card-use *may* support finding the debtor did *not* intend to pay," making it relevant to the intent analysis under § 523(a)(2)(A).  *See, e.g.*, *In re Mercer*, 246 F.3d 391, 409 (5th Cir. 2001) (en banc) (emphasis in original).

6

"To the extent that FNBO did have certain case law to support its legal claims," Sysouvanh argues that "such case law was inapplicable given the facts presented in those cases and this one." (Appellee's Reply (dkt. #30) 11.)  This argument takes far too narrow a view of supporting case law.  Rare are the cases that cannot in some way be factually distinguished from one another, but that does not mean the principles of law they espouse are necessarily inapplicable.  Even if Sysouvanh were right and the cases FNBO cited were more factually extreme, FNBO was free to argue on appeal for the application of the reasoning from those cases to the present, less-extreme case.

Finally, Sysouvanh argues that the Seventh Circuit has entirely rejected the implied misrepresentation theory, so FNBO acted frivolously in relying on this theory on appeal. (Appellee's Reply (dkt. #30) 12.)  First, this court *adopted* the majority view that a credit card purchase is an "implied representation."  Second, the decision relied upon by Sysouvanh, *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), holds only that "section 523(a)(2)(A) is not *limited* to 'fraudulent misrepresentation'" and provides an alternative (broader) "actual fraud" analysis.  *Id.* at 893 (emphasis added).  While *Bungert* suggests that *McClellan* may prompt a new and more realistic analysis of credit card abuse, 315 B.R. at 739, that does not mean use of a credit card is no longer viewed as an "implied representation."  Even if it did, FNBO was not acting frivolously in arguing the contrary.

B.  **Claims of Misconduct**

More broadly, Sysouvanh argues that FNBO's appeal was "exactly the type of litigation contemplated" by the policy considerations underlying Bankruptcy Rule 8020.[2] (Appellee's Reply (dkt. #30) 14.)  She asserts that the case was "meritless" and brought in bad faith to force a settlement, even though FNBO "knew its case would not prevail." (*Id.* at 17.)  For the most part, the evidence Sysouvanh points to in support misses the mark. She cites to various settlement offers from FNBO before the bankruptcy court trial, but those offers say nothing about whether the *appeal* was frivolous.  The case she cites, *FIA Card Servs., N.A. v. Conant*, 476 B.R. 675 (D. Mass. 2012), does nothing to help her argument.  First, the bankruptcy court in that case had already determined that the proceedings had the "hallmarks of a 'strike suit.'" *Id.* at 681.  Here, the bankruptcy court found that FNBO, if not substantially justified, "may have had reason to undertake further review." Second, the *Conant* court said *nothing* as to the merits of the appellee's request for sanctions based on a frivolous appeal.  The request was denied because the appellee in that case did not file a separate motion. *Id.* at 684.  Absent that procedural error, there is no indication the request *would* have been granted, nor did the *Conant* court so suggest.

The remainder of Sysouvanh's arguments for an award of damages focus on alleged procedural errors and improper conduct, which under *Bussom-Sokolik* may constitute a basis for sanctions even if the appeal itself is not substantively frivolous.  *See In re Bussom-Sokolik*, 635 F.3d at 270.  Some of the claimed misconduct has been previously rejected by this

---

[2] Rule 8020 serves the same purpose as Fed. R. App. P. 38: "to penalize an appellant and to compensate the appellee for the delay and expense of defending the appeal" and to "deter[] future frivolous appeals." 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 8020.01 (16th ed. 2013).

court's earlier rulings and need not be addressed again here.[3]  Other conduct that Sysouvanh argues was improper stretches the limits of that word.  For instance, Sysouvanh appears to fault FNBO for not "voluntarily withdraw[ing]" certain trial exhibits after Sysouvanh filed her motion to strike, rather than arguing that they were improperly excluded.  (Appellee's Reply (dkt. #30) 21.)  This court ultimately agreed with Sysouvanh that the trial court made no evidentiary error, since it never actually ruled to exclude the exhibits, but this hardly makes "improper" FNBO's decision not to voluntarily withdraw those exhibits simply because they are the subject of a motion to strike.

Sysouvanh argues alternatively that a "continued pattern of conduct" by FNBO's counsel, attorney Robert Cooper, invites Rule 8020 sanctions, citing *in re Stahl*, 222 B.R. 507 (Bankr. W.D.N.C. 1998).  *Stahl* did not involve Rule 8020, but rather an award of fees under § 523(d) -- an award that the bankruptcy court here has already given to Sysouvanh and that this court affirmed in its previous order.  This court declines to find this appeal frivolous simply because the bankruptcy court found the claims were not "substantially justified."  On the contrary, the bar for a "substantially justified" adverse proceeding is higher than that for non-frivolousness.  *See in re Sasse*, 438 B.R. 631, 651 (Bankr. W.D. Wis. 2010); *see also in re Stahl*, 222 B.R. 497 (Bankr. W.D.N.C. 1998) ("Under § 523(d) there is no requirement that the creditor-initiated lawsuit be frivolous or commenced in bad

---

[3] For example, Sysouvanh argues that FNBO "failed to comply with deadlines" by filing its brief three days late and that the appeal could have been dismissed accordingly. (Appellee's Reply (dkt. #30) 21.)  This court has already considered that argument and declined to dismiss the appeal, while extending Sysouvanh's deadline to file her Response. (*See* dkt. #9.)  Likewise, Sysouvanh argues that FNBO failed to comply with the court's order that its response to additional authority be limited to 2 pages. (Appellee's Reply (dkt. #30) 22.) This court also considered that argument and found that FNBO had substantially complied with the order. (*See* Opinion & Order (dkt. #22) 9.)

9

faith before costs and fees may be awarded."). Accordingly, the court will not collapse these two separate inquiries into one. The correct focus for Rule 8020 is on whether the *appeal* was "frivolous," not whether the underlying proceeding was substantially justified. The court also declines to find that simply because FNBO's attorney was characterized as "extremely aggressive" in a different case, it necessarily follows that he behaved in bad faith here.

**II. Motion for Rehearing**

FNBO separately moved for rehearing of this court's earlier order rejecting its appeal pursuant to Bankruptcy Rule 8015.[4] A party may request a rehearing under Bankruptcy Rule 8015 where "it believes that the appellate tribunal has overlooked or misapprehended some point of law or fact." 10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 8015.01 (16th ed. 2013). FNBO purports to advance two such arguments. As an initial matter, FNBO argues that this court should have held the use of a credit card is a representation of *ability* to repay actionable under 11 U.S.C. § 523(a)(2)(A), requiring that credit card debt be excepted from discharge. In the alternative, FNBO argues that this court erred in not finding its adversary proceeding substantially justified. (Appellant's Mot. for Rehr'g (dkt. #26) 1.)

This court can find no relevant point of law or ract that was overlooked with regard to FNBO's first argument. FNBO points to *In re Schnore*, 13 B.R. 249 (Bankr. W.D. Wis. 1981), in which Judge Martin held that the plaintiff would meet its burden of proving misrepresentation "if it [could] show that: (1) the debtor purchased goods by means of a

---

[4] The Seventh Circuit has noted that Bankruptcy Rule 8015 is "the bankruptcy counterpart to Fed.R.Civ.P. 59(e)." *Matter of Grabhill Corp.*, 983 F.2d 773, 775 (7th Cir. 1993).

credit card; and (2) at the time that the purchase was made, the debtor *either did not have the means to* or did not intend to pay for the goods." *Id.* at 254. Interestingly, when *Schnore* was decided, § 523(a)(2)(A) already contained the language "other than a statement respecting the debtor's or an insider's financial condition." *See id.* at 251 (quoting 11 U.S.C. § 532(a)(2)(A)). Thus, FNBO is correct that *Schnore* appears to provide some support for FNBO's interpretation of § 523(a)(2)(A) even as revised. The Eastern District Bankruptcy court's *Bungert* decision calling the Western District Bankruptcy Court's *Schnore* decision into question because "the implied representation of the *ability* to repay was eliminated in light of the language of Bankruptcy Code § 523(a)(2)(A)" could have created some confusion, given that this language already existed when *Schnore* was decided and FNBO is proceeding in the Western District.

Still, this does not mean the court "overlooked" a point of law in rejecting FNBO's appeal, nor does the court find any error upon reconsideration. Rather, as previously discussed, there appears to be a split of authority on the question of whether § 523(a)(2)(A) makes actionable misrepresentations as to the *ability* and not merely the *intent* to repay a debt. *Compare, e.g., In re Anastas*, 94 F.3d 1280, 1285-86 (9th Cir. 1996) (finding the implied representation of § 523(a)(2)(A) is of the intention, not the ability, to repay), *with In re Moody*, 203 B.R. 771, 774-75 (Bankr. M.D. Fla. 1996) (rejecting the "overly narrow" approach in *Anastas* and finding § 523(a)(2)(A) exception extends to situations "where the card holder made charges by using the card when he or she knew, or should have known, that he or she had no ability to repay the debt or had no realistic expectations to be able to repay the debts in the foreseeable future"). Given the language of § 523(a)(2)(A) deeming statements "respecting the debtor's or an insider's financial condition" excluded from its

11

scope, however, this court finds the *Bungert* court's interpretation of the Code language more persuasive and, therefore, declines to alter its judgment on this point. Nor did it overlook "Judge Martin's failure to consider whether the Debtor made her representations to the Plaintiff in reckless disregard for the truthfulness of those representations." (Appellant's Reply (dkt. #29) 2.) Rather, like *Bungert*, it finds the ability-to-repay question is *not* separately actionable.[5]

Alternatively, FNBO contends that this court overlooked or misapprehended the case law supporting its positions in the adversary proceeding, requiring it to reconsider whether that proceeding was "substantially justified." As this court noted in its previous opinion, that question, at least as regards FNBO's position on the § 523(a)(2)(A) issue, was a close one. "[T]he bankruptcy court's determination of whether the position of a creditor is 'substantially justified' or whether 'special circumstances' exist is typically reviewed for abuse of discretion." *In re Sales*, 228 B.R. 748, 752 (B.A.P. 10th Cir. 1999) (citations omitted). The court did not find previously, and does not find upon reconsideration, that the bankruptcy court abused its discretion in finding FNBO failed to meet its burden of showing *substantial* justification for its position.

As the bankruptcy court did here, courts often look to whether the creditor conducted at least a preliminary examination of a debtor's condition in determining whether a proceeding was substantially justified under § 523(d). *See in re Landry*, 08-C-947, 2009 WL 959421, at *2 (E.D. Wis. Apr. 7, 2009). FNBO does not, nor could it, quarrel

---

[5] At the same time, the court maintains its view that a debtor's awareness of a hopeless inability to pay can be "evidence of fraudulent intent." *In re Choi*, 203 B.R. 397, 400 (Bankr. E.D. Va. 1996). Even taking that into account, however, the court found that the bankruptcy court had not clearly erred in finding that Sysouvanh *did* intend to repay the debts to FNBO when she incurred them.

with the bankruptcy and this courts' conclusion that FNBO failed to inquire into the facts surrounding the Sysouvanhs' bankruptcy filing before bringing an adverse proceeding. Rather, FNBO argues that there were no subsequent changes in circumstances or facts that it failed to uncover by declining to attend the § 341 creditors' meeting or avail itself of its investigative right under Federal Rule of Bankruptcy Procedure 2004(b).  Thus, FNBO appears to contend that its failure to investigate was harmless and that the facts that came out during the adversary proceeding substantially justified its actions.

Even the case FNBO cites in support of this argument, *In re Chinchilla*, 202 B.R. 1010 (Bankr. S.D. Fla. 1996), states that "some form of discovery, at least informal communication to the debtors or their counsel, should be the norm rather than the exception." *Id.* at 1018.  In fact, that court specifically found "[t]he likelihood of filing an unjustified fraud complaint against a credit card user is increased where, as here, the prefiling investigation is both minimal and negligent." *Id.* at 1017.  That there is no "smoking gun" that FNBO could have discovered before filing does not mean it was substantially justified in filing an adversary complaint without such an investigation.  As this court previously noted, FNBO's failure to inquire into the circumstances surrounding the bankruptcy filing does not help its case, lack of "smoking gun" notwithstanding.

In the end, FNBO essentially argues that because Sysouvanh veered close to fraud territory (at least in this court's view), the bankruptcy court's determination finding that FNBO was not substantially justified in bringing such a proceeding should be overruled. The court disagrees.  As in *Chinchilla*, while some of the objective factors that bear on the "intent" inquiry ended up supporting FNBO's position, "fraud cases should only be *filed* when the facts derived from a pre-filing investigation (which will almost always require at

13

least informal inquiry) enable the plaintiff to show that the debtor used his or her credit card without intending to repay the debt." *Id.* at 1016-17 (emphasis added). The bankruptcy court found that FNBO presented minimal evidence as to the lack of intent to repay, relying for the most part on Sysouvanh's poor financial condition and the nature of some of the charges. The bankruptcy court found such evidence insufficient to establish *substantial* factual justification for FNBO bringing an adversary proceeding. This court continues to see no abuse of discretion in that finding.

ORDER

IT IS ORDERED that:

(1) defendant Phouthasone Sysouvanh's motion for Bankruptcy Rule 8020 damages and costs (dkt. #24) is DENIED;

(2) plaintiff First National Bank of Omaha's motion for rehearing (dkt. #26) is DENIED; and

(3) plaintiff's motion for leave to file a sur-reply (dkt. #31) is DENIED as moot.

Entered this 2nd day of January, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge